*Decision will be entered under Rule 50.*

BEN GREENBAUM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28888.   Promulgated August 4, 1930.

*George E. H. Goodner, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

476

Matthews: The evidence leaves no doubt that the petitioner's investments in the capital stock of the Consolidated Lease & Oil Co., of the Texas United Oil Co. of Dallas, and of the Tell Oil & Gas Co., made subsequent to March 1, 1913, and amounting in all to $3,000, became entirely worthless in 1922. Nothing whatever was recovered by the petitioner from these investments, and, consequently, the entire amount is properly deductible from income of that year, as losses resulting from transactions entered into for profit and not compensated for by insurance or otherwise.

During 1922 and 1923, upon orders of the petitioner, the Grayona Needlecraft Corporation, of which the petitioner was the principle stockholder and by whom he was employed as a salesman, disbursed the sums of $17,851.23 and $79,489.27, respectively, in payment of notes of Greenbaum & Ross, Inc., and of the Lyk-Glas Co. of Greater New York, which had been endorsed by the petitioner and for which he was liable by reason of the default of the principals. These disbursements were charged against the account of the petitioner on the books of the paying corporation. During 1923 there were three credits to the petitioner's account, totaling $12,667.20, representing sums received by the Grayona Needlecraft Corporation in reimbursement for payments on the notes of the defunct corporations. Thus the net disbursements made by the corporation and charged to the petitioner's account were $17,851.23 in 1922, and $66,822.07 in 1923.

At the time these disbursements were made, there was no prospect of the petitioner ever recovering anything from the principals, and, in fact, nothing has ever been recovered from them. Greenbaum & Ross, Inc., had discontinued business in 1918, and it was entirely without any resources. The Lyk-Glas Co. had operated at a tremendous loss, and at no time was it in a position to meet its obligations. In the summer of 1923 there were very definite indications that the business could not be carried on successfully, and the stockholders were anxious to wind up its affairs. It was not with any hope or expectation of ultimate success that the business of the Lyk-Glas Co. was continued until 1926. That was done upon the insistence of the petitioner that he needed time within which to cover his losses. He was still engaged in liquidating the obligations of Greenbaum & Ross, Inc., and he wanted to spread his losses so as to obviate any personal

financial embarrassment, and he proposed to do that by continuing the business so that the company would be in a position to renew its notes whenever he was unable to meet them at maturity. As to Victor Greenbaum and Walter Ross, who were coendorsers on the notes of the two defunct corporations, the evidence clearly shows that they have never been in a position to assist the petitioner in meeting these obligations, and that their financial condition has continuously been such that the petitioner has not been able to recover anything from them.

As petitioner kept no individual books of account and filed his returns on a cash receipts and disbursements basis, he sustained losses as and when the disbursements were made by the Grayona Needlecraft Corporation and charged to his account. The fact that the disbursements were made by the corporation directly to the holders of the notes is not important. The result would not have been different had the corporation turned the funds over to the petitioner in the first instance, the petitioner then taking up the notes. See *Eckert v. Commissioner*, 42 Fed. (2d) 158, affirming the Board's decision in *A. James Eckert*, 17 B. T. A. 263.

In addition to the disbursements made by the Grayona Needlecraft Corporation in settlement of the obligations of the two defunct corporations, which we have listed in the findings of fact, there were three others which the petitioner testified were made for that purpose. These were made by checks drawn by the Lorimier Greenbaum Co. (Grayona Needlecraft Corporation), the descriptions of which are as follows:

| No. | Date | Payee | Amount |
|---|---|---|---|
| 892 | Mar. 10, 1922 | Meyer Simon | $2,525.00 |
| 2201 | Mar. 10, 1922 | V. Greenbaum | 3,475.00 |
| 2395 | May 5, 1922 | Greenbaum & Ross | 500.00 |

The ledger of the Grayona Needlecraft Corporation shows that these three disbursements were not charged to the petitioner's account, but that they were charged to notes receivable account, and there is nothing in the record which shows that they were ever taken out of that account and charged to the account of the petitioner. Neither is there any evidence that the petitioner reimbursed or satisfied the corporation for these disbursements. The petitioner testified that these three items may have been included in the amount of $31,936.01, which by journal entry of April 30, 1922, was credited to notes receivable and charged to the petitioner's account. We seriously doubt that such is the case. Rather, we believe that that journal entry was intended to charge back to the petitioner's ac-

count the total of the monthly credits to his account, during the fiscal year, through journal transfers to notes receivable account.

The losses sustained upon payment of the notes endorsed by petitioner amounted to $17,851.23 for 1922, and $66,822.07 for 1923. The amounts claimed by taxpayer in his petition as deductions on account of such losses were $50,000 in 1922 and $30,000 in 1923. As the pleadings were not amended to conform with the proof, such losses should be allowed in the amounts of $17,851.23 for 1922, and $30,000 for 1923.

*Judgment will be entered under Rule 50.*